UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESS WILLIAM BOWMAN,

    Petitioner,         Civil No. 2:18-CV-11822
                                HONORABLE GERSHWIN A. DRAIN
v.                            UNITED STATES DISTRICT JUDGE

THOMAS WINN,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

Jess William Bowman, ("petitioner"), confined at the Saginaw Correctional Facility in Freeland, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the St. Clair County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion, which are presumed

1

correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See, e.g.*, *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of the murder of Timothy Belisle in front of defendant's mobile home. The dispute arose over glass that broke on the road in front of defendant's mobile home when Belisle was moving an old refrigerator. Defendant's girlfriend, Sarah Gelushia, and Belisle's girlfriend, Jessica Thomas, were also present during the homicide. Defendant's defense at trial was that he shot Belisle in self-defense or in defense of Gelushia.

*People v. Bowman*, No. 327596, 2016 WL 6127703, at *1 (Mich. Ct. App. Oct. 18, 2016).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 500 Mich. 983, 893 N.W.2d 630 (2017).

Petitioner seeks habeas relief on the following grounds:

I. The trial court erred in repeatedly excluding relevant evidence regarding Sarah Gelushia's physical condition and her fear of injury at the hands of Tim Belisle and in doing so violated defendant's right to present a defense.

II. Mr. Bowman was denied his Sixth Amendment right to a fair and impartial trial when the trial judge interfered with the presentation of evidence, questioned Mr. Bowman with hostility and incredulity, belittled defense counsel, and displayed bias through her tone and demeanor.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."

*Id.* at 411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Michigan Court of Appeals reviewed and rejected a portion of petitioner's judicial bias claim under a plain error standard because petitioner failed to preserve a portion of his claim as a constitutional issue at the trial court level. AEDPA deference still applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017); *cert. den.* 138 S. Ct. 1998 (2018).[1]

---

[1] Respondent urges this Court to deny this portion of the claim on the ground that it is procedurally defaulted because petitioner failed to object at trial. But procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Indeed, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Here, petitioner's unpreserved judicial bias claims are

4

### III.  Discussion

### A.  Claim # 1.  The exclusion of evidence and right to present a defense claim.

Petitioner alleges that the trial court violated his right to present a defense by excluding evidence pertaining to Sarah Gelusia's physical condition and her fear of injury at the hands of Tim Belisle.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense.  This right is a fundamental element of the due process of law.  *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'") (internal citations omitted).  However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence.  *Montana v. Egelhoff*, 518 U.S.

---

related to his preserved judicial bias claims.  Because the same legal analysis applies to both the preserved and unpreserved judicial bias claims, it would be easier to simply address the merits of the unpreserved claims.  *See Lambrix*, 520 U.S. at 525 ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").

37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. Trial court judges have "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* at 689-90 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F.3d 507, 511-12 (6th Cir. 2003).

Petitioner alleges the additional medical information pertaining to Gelushia's medical condition, and her feelings of a threat by Tim Belisle, were admissible to support his defense of others claim. The Michigan Court of Appeals found that the trial court reasonably limited the trial testimony of Gelushia as follows:

> Defendant challenges the trial court's limitation of evidence regarding Gelushia's preexisting neck injury, medical treatment, her allegedly fragile physical condition, and the exclusion of evidence concerning Gelushia's purported fear of injury at the hands of Belisle. Defendant contends that this evidence was relevant to his claim that he was acting in self-defense or in defense of Gelushia when he shot Belisle. In

6

Michigan, the right to use deadly force in self-defense or in defense of others is set forth in MCL 780.972(1), which states:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.
>
> (b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.

Therefore, a defendant must "have an honest and reasonable belief that there is a danger of death, great bodily harm, or a sexual assault in order to justify the use of deadly force." *People v. Guajardo,* 300 Mich.App 26, 35–36; 832 NW2d 409 (2013). The reasonableness of a defendant's belief "depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *People v. Orlewicz,* 293 Mich.App 96, 102; 809 NW2d 194 (2011).

In the present case, the trial court's exclusion of evidence concerning Gelushia's state of mind fell within the range of principled outcomes. Defendant's self-defense or defense-of-others claim turned on whether he, not Gelushia, had an honest and reasonable belief that there was a danger of death or great bodily harm. Testimony concerning Gelushia's supposed feelings would have confused the issue for the jury. The trial court did allow Gelushia to testify about Belisle's statements and behavior. For example, Gelushia testified that Belisle told her to "shut the f—— up[;]" that Belisle seemed angry and upset; and that, during his argument with defendant, Belisle got out of his truck, slammed the door, and came running around the front of the truck in a rage, reaching the right front corner of the truck near where Gelushia and defendant were standing. Gelushia testified that defendant then stepped in front of Gelushia and moved toward the front of the truck. Therefore, although the trial court excluded testimony concerning Gelushia's

7

purported *feelings,* the court allowed Gelushia to testify about Belisle's alleged aggressive *actions.* Gelushia's testimony concerning Belisle's conduct was relevant to the defense theory of self-defense or defense of others. In addition, defendant testified about why he believed deadly force was necessary in light of his own perceptions.

The trial court also did not err in limiting Gelushia's testimony concerning her preexisting neck injuries and medical treatment. Defendant's theory was that Gelushia's neck injuries made her fragile, thereby supporting the reasonableness or honesty of defendant's perception that deadly force was justified to protect her from Belisle. Some evidence of Gelushia's physical condition was presented to the jury. Notably, the trial court allowed testimony concerning Gelushia's neck injuries and physical condition. Specifically, Gelushia testified that she had three neck surgeries before this incident because of a herniated disk, and that she had metal plates in her neck. Gelushia explained that because of these prior injuries, she could not physically have turned and run away during this incident. Gelushia further testified that defendant knew about her neck surgeries, went to the hospital with her, and aided in her recovery. Gelushia testified that she discussed her neck injuries with defendant, and that defendant knew about the metal in her neck and about her multiple surgeries when the incident in this case occurred. It was only after Gelushia testified to all of these facts that the trial court ruled *further* testimony on her medical treatment would be redundant. Regardless, defendant further testified about Gelushia's physical condition. Defendant explained his awareness of Gelushia's injuries, surgeries, and disability, all of which he knew about on the date of the homicide. Defendant said that if Gelushia "gets hit or falls down and hits her head it can kill her." The trial court did not abuse its discretion in limiting additional testimony regarding Gelishia's physical condition, nor did its limitation deprive the defendant of his defense that he had a reason based perception that Gelushia faced imminent grave physical harm.

*People v. Bowman*, 2016 WL 6127703, at *2–3.

Because further testimony pertaining to Gelushia's physical condition would have been redundant to the extensive testimony already provided, the exclusion of

8

this additional testimony did not violate petitioner's right to present a defense. There was ample evidence offered in support of petitioner's self-defense or defense of others claim. The additional testimony would have been cumulative of other evidence that petitioner had acted in self-defense or defense of others, and thus, the Michigan Court of Appeals' determination that the exclusion of this evidence did not violate petitioner's right to present a defense was not an unreasonable application of clearly established law, such as to entitle petitioner to relief. *See Blanton v. Elo*, 186 F.3d 712, 715-16 (6th Cir. 1999).

Petitioner also claims that evidence of Gelushia's feelings should have been admissible to show that Gelushia was in fear of her life. But as the Michigan Court of Appeals correctly explained, "Defendant's self-defense or defense-of-others claim turned on whether he, not Gelushia, had an honest and reasonable belief that there was a danger of death or great bodily harm." Further, the court found that the "Testimony concerning Gelushia's supposed feelings would have confused the issue for the jury." *People v. Bowman*, 2016 WL 6127703, at *3. This conclusion did not involve an unreasonable application of clearly established law, especially considering the evidence was only remotely relevant, if at all, to petitioner's self-defense or defense of others claim. *See Farley v. Lafler,* 193 F. App'x 543, 546 (6th Cir. 2006).

9

Finally, even if the trial court judge did err in excluding the additional testimony pertaining to Gelushia's physical condition and/or her feelings pertaining to the fear of being injured, any error was harmless. In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. Here, petitioner fails to demonstrate such an effect.

To constitute lawful self-defense under Michigan law, the evidence must show that: (1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002) (citing *People v. Barker*, 437 Mich. 161, 165, 468 N.W.2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322, 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31, 384 N.W.2d 72 (1985)). Importantly, a defendant is not entitled to use any more force than is necessary to defend himself. *Id.* at 609 (citing *Kemp*, 202 Mich. App. at 322). "The law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape

from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Id.* (internal citation omitted). In Michigan, the right to act in self-defense includes the right to defend another person. *Id.* (citing *People v. Curtis*, 52 Mich. 616, 622, 18 N.W.2d 385 (1884); *People v. Wright*, 25 Mich. App. 499, 503, 181 N.W.2d 649 (1970)).

The evidence in this case suggests that petitioner intended to physically harm the victim, even before their fatal encounter, thereby cutting against his self-defense claim. Indeed, dispatch officer Shane Pruitt testified that when he received a call from petitioner on the night of the murder, petitioner appeared irate and "said something to the extent, well, you need to get fucking security over here before I beat this guy's ass, have him cleanup his mess." (T. 2/4/2015, pp. 360-364). The evidence also suggests that petitioner used more force than was necessary to combat the victim. Security officer Walter Emerick testified that when he arrived at petitioner's residence, he observed a person lying in the street in front of a pickup truck. Emerick described petitioner as agitated and excited. When Emerick asked petitioner what had happened, he replied, "I thought the guy, the guy was coming at me, I thought he was going to hit me so I shot him." Emerick reiterated, "You shot him?" And Petitioner said, "Yeah, he, I thought he was going to attack me." *Id.* at 377-378. The jury also heard from the victim's girlfriend, Jessica Thomas, who testified that the victim was unarmed. *Id.* at 444. Further, that after petitioner shot

11

the victim, petitioner said, "it was no biggy." *Id.* This attitude was corroborated by several other witnesses, who testified that petitioner stated, somebody should "call 911" and get this "piece of shit" or "mother fucker" from in front of my house. (T. 2/5/2015, pp. 569, 593, 644).

Considering that petitioner appeared irate and willing to physically harm the victim, even before their fatal encounter, and the fact that the victim was unarmed, a reasonable jury could have concluded that petitioner's actions were inconsistent with someone acting in self-defense, even with the additional evidence that the state trial court excluded. Accordingly, excluding the evidence of Gelushia's fear of physical injury, and the additional testimony pertaining to Gelushia's frail physical condition, did not have a substantial or injurious effect on petitioner's case, such as to entitle him to habeas relief. *See Fleming v. Metrish*, 556 F.3d 520, 536-37 (6th Cir. 2009). Petitioner's first claim for relief is therefore denied.[2]

---

[2] To the extent petitioner challenges the trial court's decision to exclude certain impeachment evidence against Jessica Thomas, this claim also fails. In his direct appeal, petitioner argued that he should have been allowed to impeach Thomas with a prior inconsistent statement to a police detective. The statement was in regard to whether Gelushia should have felt threatened by the victim. The Michigan Court of Appeals found no error, suggesting the impeachment evidence pertained to a collateral matter, and thus, was inadmissible. The court stressed that petitioner's self-defense claim turned on whether he had an honest and reasonable belief that deadly force was justified. Hence, the court held, "[w]hat Thomas believed about what Gelushia should or could have felt thus did not relate to the substantive issues or concern a matter closely bearing on defendant's guilt or innocence or evidence bias against Gelushia or the defendant." *Borman*, 2016 WL 6127703, at *3. In addition, the Court of Appeals found that the evidence was inadmissible under MRE

### B. Claim # 2. The Judicial bias claim.

Petitioner alleges that the trial court judge exhibited bias against him by excluding testimony, claiming it relied on hearsay; by demonstrating impatience and hostility while telling Gelushia to "answer the question"; by telling trial counsel to "move on" during opening statement and while questioning a witness; by making objections from the bench; and by stopping trial counsel's closing argument when it exceeded the agreed-upon 30 minute time limit.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). The right to an impartial judge is a right whose deprivation a state prisoner may complain of in a federal habeas corpus proceeding. *Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir. 1995) (citing to *Turner v. Ohio*, 273 U.S. 510, 523 (1927); *In Re Murchison*, 349 U.S. 133 (1955)). Trial judges have a wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the

---

403, given the risk of confusing the issues by injecting considerations of the feelings of persons other than defendant. Petitioner fails to demonstrate that this decision involved an unreasonable application of clearly established law. *See Crane*, 476 U.S. at 689-90. Moreover, as the Court of Appeals concluded, Thomas' credibility as a witness had already been challenged in other ways. Therefore, "it is far from clear that additional impeachment evidence regarding whether Thomas made a statement about whether Gelushia could or should have felt threatened would likely have made a difference in the jury's ultimate assessment of Thomas's credibility." *Borman*, 2016 WL 6127703, at *4.

impression that the judge believes that the defendant is guilty. *Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997); *Brown v. Palmer,* 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

In reviewing an allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *Brown*, 358 F. Supp. 2d at 657. To support an allegation of bias by a state trial judge in order to obtain habeas relief, a habeas petitioner must factually demonstrate that during the trial, the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. *Brinlee v. Crisp*, 608 F.2d 839, 852-53 (10th Cir. 1979); *Brown,* 358 F. Supp. 2d at 657. A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *Brown,* 358 F. Supp. 2d at 657. The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.*

Importantly, the pertinent question on habeas review is not whether the judge's questions or comments might constitute reversible error if the conviction was being reviewed on direct review, but whether the state appellate court's rejection of the judicial misconduct claim was a reasonable or unreasonable application of clearly established federal law. *See Allen v. Hawley*, 74 F. App'x 457, 460-61 (6th Cir. 2003).

In the present case, the Michigan Court of Appeals found petitioner's challenge to the trial court's hearsay ruling waived, because he did not raise his challenge in his statement of questions presented to the court. *People v. Bowman*, 2016 WL 6127703, at *9. Moreover, the court found that trial counsel acquiesced in the underlying hearsay ruling. *Id.* With respect to the alleged inappropriate questions and remarks by the trial judge in connection with this hearsay information, the court found them to be isolated and simply an expression of "frustration that defendant seemed to be avoiding a direct answer of the court's precise question regarding the basis of defendant's knowledge, which was pertinent to the court's earlier evidentiary ruling." *Id.* at *10. The alleged inappropriate remark to Gelushia to "answer the question" was likewise made in response to answers given by Gelushia that appeared to suggest that she was being "evasive or untruthful." *Id.* at *11. The Michigan Court of Appeals also rejected petitioner's other complaints as to the trial judge's remarks to "move on" and objections from the bench, because

trial counsel had previously acquiesced in the limitations the judge was then imposing and because petitioner did not provide any support for his arguments. *Id.* at 7, 11. Petitioner fails to demonstrate that the Michigan Court of Appeals' decision was based on unreasonable application of clearly established law.

In addition, Petitioner argued that it was improper for the trial judge to rebuke trial counsel when he went three (3) minutes beyond the agreed-upon 30-minute time limit for closing argument. Although petitioner claims that the trial court judge belittled defense counsel by curtailing his closing argument when it went beyond the agreed-upon time limit, the Michigan Court of Appeals indicated that the judge's frustration with trial counsel's behavior was not explicitly expressed until after the jury was excused following closing argument:

> Later, after the jury was excused following the conclusion of closing arguments, the trial court made the following comment:
>
> Wait for the door to close and I'd like to say something.
>
> Mr. Damman, I have had [sic] never before had a lawyer treat me with the level of disrespect with which you treated me when I told you your time had elapsed. I'm the one who keeps the time. It is my time that rules. At this particular moment I am inclined to sanction you for your behavior. Throughout this trial you have been telling me what to do. I don't appreciate it. So, I would, I'm going to think about whether I'm going to do anything about this, but never, never have I had a lawyer behave that way toward me, and certainly not in front of a jury. Frankly, you should be ashamed of yourself. And I'll leave it at that. See you back in ten minutes.

16

*Id.* at *12. Any expression of impatience and/or frustration with defense counsel in front of the jury was limited to defense counsel's repetitive questioning and disregard for the court's evidentiary rulings; thus, the judge's conduct was not prejudicial, such as to deprive petitioner of a fair trial. *See Todd v. Stegal,* 40 F. App'x 25, 27 (6th Cir. 2002).

In this case, the trial court judge's reprimands "were not out of line, nor were they substantially adverse to the [petitioner] himself. There is no showing that the trial judge ever intimated [her] opinion on the merits of the case." *Id.* When viewing the record in its entirety, the judge's conduct throughout the course of the trial did not display the type of "'deep-seated favoritism or antagonism' that would 'leave [a reviewing court] with an abiding impression that the trial judge permitted [herself] to become personally embroiled with [defense counsel]' so as to constitute a Due Process violation." *Gordon v. Lafler*, 710 F. App'x 654, 664 (6th Cir. 2017), *cert. denied*, No. 17-1404, 2019 WL 113079 (U.S. Jan. 7, 2019) (citing *Liteky,* 510 U.S. at 555). Moreover, any prejudice was also cured by the fact that the judge instructed the jury that her rulings were not evidence, and further advised the jurors that if they believed she had an opinion about how they should decide the case, that they should disregard that opinion and that they were the only judges of the facts. (T. 2/6/15, p. 890); *see Todd v. Stegal,* 40 F. App'x at 28.

Finally, petitioner points to unfavorable rulings by the judge in support of his judicial bias claim. But the Supreme Court has indicated that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky,* 510 U.S. at 555. "In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.* For that reason, and those articulated throughout this opinion, petitioner is not entitled to relief on his judicial bias claim.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability, because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus

is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.

Dated: May 3, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 3, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager
